# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELLI LYNN GRAHAM,  )<br>  )<br>           Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>COMMISSIONER OF THE SOCIAL  )<br>SECURITY ADMINISTRATION,  )<br>  )<br>          Defendant.  ) | Case No. CIV-10-752-F |

## **REPORT AND RECOMMENDATION**

Plaintiff, Ms. Shelli Lynn Graham, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I. **Procedural Background**

Ms. Graham filed her applications for DIB and SSI on May 3, 2007, alleging an onset date of April 15, 2007. The Social Security Administration denied her applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #13] (AR) at 6-18. The Appeals Council denied Ms. Graham's request for review. AR 1-3. This appeal followed.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined that Ms. Graham had not engaged in substantial gainful activity since April 15, 2007. AR 11.

At step two, the ALJ determined that Ms. Graham has the following severe impairments: chronic back pain and affective mood disorder. AR 11.

At step three, the ALJ found that Ms. Graham's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13.

The ALJ next determined Ms. Graham's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can perform simple tasks with routine supervision, and cannot have public contact or customer service.

AR 14. At step four, the ALJ concluded that Ms. Graham is unable to perform her past relevant work as a cashier/stock, hair stylist, or commercial cleaner. AR 17.

At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Graham could perform. Based on the testimony of the vocational expert (VE), the ALJ found that Ms. Graham is able to perform other jobs such as office clerk, carrier/messenger, and order filler. AR 18.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. Graham contends that the ALJ erred by misrepresenting the medical evidence and inserting her own medical opinions. Ms. Graham further contends that the hypothetical question submitted to the vocational expert (VE) was incomplete. Finally, Ms. Graham challenges the ALJ's credibility analysis.

## V. Analysis

### A. The ALJ's Analysis of the Medical Evidence

In Proposition I, Ms. Graham contends that the ALJ erred in that she misrepresented the medical evidence.

First, Ms. Graham takes issue with the ALJ's summary of the radiological reports of findings from MRI studies performed on January 23, 2004, and June 17, 2005. Both of these studies were performed after Ms. Graham sustained an on-the-job injury, but well before her alleged disability onset date for purposes of her applications for DIB and SSI. According to Ms. Graham, the ALJ's description of the MRI "leaves the reader with the impression there was no significance due to the persuasive effect of 'small,' 'mildly,' and 'stable.'" Opening Brief of Plaintiff [Doc. # 19] at 3.[1]

A review of the record demonstrates, however, that the challenged terminology is taken directly from reports of the two MRI studies as interpreted by Dr. Gregory Henzie. The January 23, 2004, report states in relevant part:

> There is mild disc dehydration throughout the lumbar and lower thoracic spine. There is a small broad-based central disc protrusion at L5-S1 associated with a well-defined annular tear.

---

[1]The ALJ's summary of these reports follows.

> On January 23, 2004, MRI of the claimant's lumbar spine indicated at L5-S1, a small broad-based central disc protrusion with a well-defined annular tear mildly indenting the ventral thecal sac. On June 17, 2005, MRI of the claimant's lumbar spine was stable compared to the prior MRI.

AR 11.

AR 268. The June 17, 2005, report states in relevant part:

> There is mild disc dehydration throughout the lumbar and lower thoracic spine. There is a small broad-based disc protrusion centered slightly to the left of midline at L5-S1. There is physiologic annular bulging at L4-5.

AR 267. Dr. Henzie further noted that a comparison of the June 17, 2005, MRI with the earlier MRI demonstrated that Ms. Graham's condition had remained stable. AR 267. The ALJ used the same language in her summary of the two MRI reports that Dr. Henzie used in the reports themselves. Moreover, at step two, the ALJ listed "chronic back pain" as one of Ms. Graham's severe impairments despite the fact that the two reports used the words "small," "mildly," and "stable." The ALJ's summary of the two MRI reports is accurate, and the ALJ did not interject her own medical opinions.

Ms. Graham next challenges as legal error the ALJ's summary of the discography report written by Dr. Gaylan D. Yates. In his summary, Dr. Yates stated, "Discography does suggest the L5-S1 level as her pain generator." AR 271. In her summary of Dr. Yates' report, however, the ALJ stated, "Discography did not suggest the L5-S1 level as a pin [sic] generator." AR 12. It is clear that the ALJ did not accurately relate Dr. Yates' conclusion regarding the pain-generating properties of the L5-S1 level of Ms. Graham's spine. It is likewise clear, however, that the ALJ intended to write "pain" generator rather than "pin" generator. Ms. Graham's counsel states his opinion that the ALJ "blatantly" misquoted Dr. Yates. Opening Brief of Plaintiff at 4. To this Court, however, the most likely reason for the inaccurate statement is inadvertent scrivener's error rather than intentional misrepresentation of the evidence. For this Court to assume otherwise, Ms. Graham would have to overcome

"a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larken*, 421 U.S. 35, 47 (1975). Even if Ms. Graham could overcome the presumption, Ms. Graham has not alleged or demonstrated prejudice resulting from the erroneous quotation.[2] The ALJ recognized in her decision that Ms. Graham experiences chronic back pain. The location of the "pain generator" is not material to the ALJ's decision. It is the chronic pain itself and the resulting functional limitations that are material to the ALJ's decision.

A more serious problem is the ALJ's failure to discuss the medical opinion of Dr. J. Arden Blough who examined Ms. Graham on February 26, 2007. Dr. Blough examined Ms. Graham in relation to her Workers' Compensation claim against Family Dollar Stores. While working for Family Dollar Stores, Ms. Graham sustained an on-the-job injury on August 8, 2003. She was re-injured on October 4, 2003. The purpose of Dr. Blough's examination was to determine whether Ms. Graham had undergone a change of condition since her Workers' Compensation case was adjudicated on February 16, 2006. Dr. Bough's physical examination of Ms. Graham yielded results that should have been considered by the ALJ:

> Physical examination of the lumbar spine reveals tenderness to palpation in the bilateral paraspinal musculature from L3 through L5. Lumbar range of motion is restricted in all planes, especially on flexion and extension. Lumbar pain radiates into the bilateral lower extremity with numbness and tingling. Weakness against resistance is present in the lumbar flexors and extensors. Weakness against resistance is also demonstrated in the bilateral hip, knee, and ankle flexors and extensors, with the right exhibiting the greater symptoms.

---

[2]"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, ___ U.S. ___, 129 S.Ct. 1696, 1706 (2009) (citations omitted).

> Decreased sensation to monofilament testing is present in the L4 and L5 dermatomes of the bilateral lower extremities. The patellar and Achilles reflexes are 2+ and equal bilaterally. The Valsalva maneuver produces pain in the low back. The Straight Leg Raising test is positive at 20° on the right and at 30° on the left.

AR 394. Dr. Blough concluded that, based on his review of the medical record, his medical testing, and Ms. Graham's history, Ms. Graham was "temporarily totally disabled" as of the date of the examination and that she had "sustained a change of condition for the worse in regard to her lumbar spine injury since her adjudication on February 16, 2006." AR 395.

An ALJ must discuss "the uncontroverted evidence he chooses not to rely upon as well as the significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). The ALJ states no reason for her failure to even mention Dr. Blough's examination. Any reason this Court might conjure to justify the ALJ's failure to discuss Dr. Blough's opinion would constitute improper *post hoc* rationale for supporting the Commissioner's decision. *See Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"). The Commissioner's decision should, therefore, be reversed and remanded so that the ALJ can consider the entire medical record.

### B. The ALJ's Alleged Insertion of Her Own Medical Opinions

Ms. Graham challenges several observations the ALJ included in her decision. As to Ms. Graham's alleged mental impairments, the ALJ noted that Ms. Graham "received minimal treatment for depression[]" and "did not receive the degree of care one would expect

7

of a person with a disabling mental condition." AR 16. According to Ms. Graham, by including these statements in her decision, the ALJ "overstepped [her] bounds into the providence of medicine." *See* Opening Brief of Plaintiff at 6 (*quoting Miller v. Chater*, 99 F.3d 912, 976 (10th Cir. 1996)). Neither of the challenged statements constitutes the ALJ's "medical opinion." The statement regarding the extent of treatment for Ms. Graham's depression is an observation fairly derived from the record. The second statement is the inference the ALJ drew from her evaluation of the evidence. Both statements are supported by sufficient evidence in the record. Even if the record would also support a different inference, this Court should not engage in fact-finding. *See Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir. 1983) ("In our view, the evidence is such as to permit varying inferences. The ALJ came to grips with the problem, and, on such state of the record, for us to disturb his finding would simply put us into the fact-finding business. This we should not do."). This issue does not require reversal.

### C. The ALJ's Hypothetical Questions to the VE

Ms. Graham challenges the ALJ's hypothetical questions to the VE. In determining the extent of Ms. Graham's mental impairments, the ALJ followed the psychiatric review technique required by the regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Having determined at step two that Ms. Graham's severe impairments include an affective disorder, the ALJ considered the "B" criteria for Listing 12.04 at step three to determine the degree of difficulty Ms. Graham would be expected to face in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes

of decompensation. The ALJ determined that Ms. Graham has mild difficulties with activities of daily living, moderate difficulties with social functioning, moderate difficulties with concentration, persistence and pace, and no episodes of decompensation. Because Ms. Graham's mental impairment does not cause the degree of difficulties required to meet the Listing 12.04, the ALJ assessed her mental RFC, finding that she was limited to simple tasks with routine supervision and that she could not have contact with the public or work in customer service. AR 14.

Of the three hypothetical question posed by the ALJ to the VE, the ALJ's final hypothetical question reflected the mental RFC ultimately formulated by the ALJ. AR 64. The VE identified representative jobs Ms. Graham could still perform such as courier/messenger, order filler and general office clerk. AR 64-65. The crux of Ms. Graham's argument is that a person who experiences moderate difficulties with concentration, persistence and pace would need more than "routine supervision." Opening Brief of Plaintiff at 7-8.

Ms. Graham appears to challenge the hypothetical questions because they did not include the language used in the "B" criteria of the Listing. But the ALJ's decision clearly explains that the results of an analysis of the "B" criteria do not constitute an RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various

> functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following functional capacity assessment reflects the degree of limitations the undersigned has found in the "paragraph B" mental function analysis.

AR 14. *See* SSR 96-8p, 1996WL374184 at *4 (The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process).

The ALJ properly applied the psychiatric review technique, properly determined Ms. Graham's mental RFC, and properly presented Ms. Graham's mental RFC in the hypothetical question to the VE. In formulating the mental RFC, the ALJ accounted for Ms. Graham's moderate difficulties with concentration, persistence, or pace by restricting her to simple repetitive tasks with routine supervision. She took into account Ms. Graham's moderate difficulties in social functioning by restricting her to work which does not involve public contact or customer service. The ALJ's hypothetical question to the VE was complete and accurately reflected all the mental limitations found in the RFC.

### D. The ALJ's Credibility Analysis

Finally, Ms. Graham challenges the ALJ's credibility analysis. As previously stated, the Commissioner's final decision should be reversed and remanded for consideration of the medical report of Dr. Blough. Dr. Blough's medical report could affect the ALJ's credibility analysis. Therefore, it is unnecessary for this Court to address Ms. Graham's challenge to the current credibility analysis.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by June __21st__, 2011. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __31st__ day of May, 2011.

*/s/ Valerie K. Couch*
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE